No. 23-13321-P

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

◆

MICHAEL SOCKWELL,
*Petitioner-Appellant*,

v.

COMMISSIONER, Alabama
Department of Corrections,
*Respondent-Appellee*.

◆

On Appeal from the United States District Court
For the Middle District of Alabama, Northern Division
Civil Action No. 2:13-cv-913-WKW-SRW

◆

## APPELLEE'S PETITION FOR PANEL REHEARING

Steve Marshall
*Attorney General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Tel: (334) 353-3700
Robert.Overing@AlabamaAG.gov

Edmund G. LaCour Jr.
*Solicitor General*

Robert M. Overing
*Deputy Solicitor General*

Dylan Mauldin
*Assistant Solicitor General*

Henry M. Johnson
*Assistant Attorney General*

July 21, 2025

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel for Respondent-Appellee certifies that the following persons may have an interest in the outcome of this case or appeal:

1. Anderson, James H., counsel for Sockwell during his federal habeas proceeding in the district court;

2. Ashworth, Daniel, counsel for Sockwell during his Rule 32 proceeding;

3. Baker Hostetler, firm of Petitioner-Appellant's counsel Papapetrou and Farrell

4. Becher, Bob, Montgomery County Assistant District Attorney who prosecuted Sockwell for capital murder;

5. Bell, Jerilyn, counsel for Sockwell during his Rule 32 proceeding;

6. Billingsley, Michael B., former Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

7. Brooks, Honorable Eleanor I., Montgomery County Chief Deputy District Attorney who prosecuted Sockwell for capital murder;

8. Butler, Albert S., Montgomery County Assistant District Attorney who prosecuted Sockwell for capital murder;

9. Cleary, Thomas J., counsel for Sockwell during his Rule 32 proceeding;

10. Coker, Tina M., former Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

11. Conroy, Patrick S., counsel for Sockwell during his federal habeas proceeding in the district court;

12. Crenshaw, James Clayton, Chief Deputy Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

13. Dunn, Jefferson S., former Commissioner of the Alabama Department of Corrections;

14. Evans, Honorable James H., former Montgomery County District Attorney and former Alabama Attorney General;

15. Farrell, Deirdre, counsel for Petitioner-Appellant;

16. Fields, Thomas, counsel for Sockwell during his Rule 32 proceeding;

17. Fisher, Barry J., counsel for Sockwell on direct appeal;

18. Flack, David G., counsel for Sockwell on direct appeal;

19. Govan, Jr., Thomas R., Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding and during his federal habeas proceeding in the district court;

20. Hamm, John Q., Respondent-Appellee and Commissioner of the Alabama Department of Corrections;

21. Harris, Isaiah, Sockwell's capital murder victim;

22. Harris, Louise, one of Sockwell's co-defendants;

23. Hitson, Kenneth, Montgomery County Assistant District Attorney who prosecuted Sockwell for capital murder;

24. Holliday, Shannon L., counsel for Petitioner-Appellant;

25. Hood, Alex, one of Sockwell's co-defendants;

26. Houpt, Christopher J., counsel for Petitioner-Appellant;

27. Houts, James Roy, Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

28. Hughes, Beth Jackson, Assistant Attorney General and counsel for the State of Alabama during Sockwell's federal habeas proceeding in the district court;

29.     Ingber, Matthew D., counsel for Petitioner-Appellant;

30.     Johnson, Henry M., Assistant Attorney General, counsel for the State of Alabama during Sockwell's federal habeas proceeding in the district court, and counsel for Respondent-Appellee;

31.     King, Honorable Troy R., former Alabama Attorney General;

32.     Kurtz, Candace, counsel for Sockwell during his Rule 32 proceeding;

33.     LaCour Jr., Edmund G., Alabama Solicitor General and counsel for Respondent-Appellee;

34.     Lusk, Jr., Robert E., former Assistant Attorney General and counsel for the State of Alabama on direct appeal;

35.     Madsen, Melissa, counsel for Petitioner-Appellant;

36.     Marshall, Honorable Steve, Alabama Attorney General and counsel for Respondent-Appellee;

37.     Marston, III, Joseph G.L., former Assistant Attorney General and counsel for the State of Alabama on direct appeal;

38.     Mauldin, Dylan L., Alabama Assistant Solicitor General and counsel for Respondent-Appellee;

39.     Mayer Brown, LLP, firm of Petitioner-Appellant's counsel Ingber and Houpt

40.     McCarter, Lorenzo, one of Sockwell's co-defendants;

41.     McIntire, Jeremy W., former Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

42.     Moletteri, Andrea, counsel for Sockwell during his Rule 32 proceeding;

43.     Moss, Milton, Sockwell's trial counsel;

44. Muirhead, George L., Alabama Assistant Solicitor General and counsel for Respondent-Appellee;

45. Overing, Robert M., Alabama Deputy Solicitor General and counsel for Respondent-Appellee;

46. Papapetrou, Christos G., counsel for Petitioner-Appellant;

47. Pate, Kelly F., Magistrate Judge

48. Pryor Jr., Honorable William H., former Alabama Attorney General and Chief Judge of the Eleventh Circuit Court of Appeals;

49. Rayfield, Michael E., counsel for Petitioner-Appellant;

50. Roberts, Jr., Jasper B., Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

51. Sanders, Kindaka, counsel for Sockwell during his Rule 32 proceeding;

52. Sessions, Honorable Jeff, former Alabama Attorney General;

53. Sharp, Billy, former Acting Commissioner of the Alabama Department of Corrections;

54. Shashy, Honorable William A., Montgomery County Circuit Judge who presided over Sockwell's Rule 32 proceeding;

55. Shook, Hardy & Bacon, LLP, firm of Petitioner-Appellant's counsel Rayfield

56. Sockwell, Michael, Petitioner-Appellant;

57. Stephens, Michelle Riley, former Assistant Attorney General and counsel for the State of Alabama during Sockwell's Rule 32 proceeding;

58. Stewart, Sandra J., former Assistant Attorney General and counsel for the State of Alabama on direct appeal;

59. Strange, Honorable Luther, former Alabama Attorney General;

60. Thomas, Honorable H. Randall, Montgomery County Circuit Judge who presided over Sockwell's trial;

61. Thomas, Kim T., former Commissioner of the Alabama Department of Corrections;

62. Vickers, David, Montgomery County Assistant District Attorney who prosecuted Sockwell for capital murder;

63. Walker, Honorable Susan Russ, United States Magistrate Judge;

64. Watkins, Honorable W. Keith, United States District Judge who denied and dismissed Sockwell's federal habeas petition;

65. Williams, Gilda Branch, former Assistant Attorney General and counsel for the State of Alabama on direct appeal;

66. Wise, Ronald M., Sockwell's trial counsel; and,

67. Wood, James Jerry, Sockwell's trial counsel.

Undersigned counsel further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Robert M. Overing*
Robert M. Overing
*Deputy Solicitor General*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C1

TABLE OF AUTHORITIES ..................................................................... ii

PETITION FOR PANEL REHEARING.................................................1

STATEMENT ........................................................................................4

ARGUMENT .........................................................................................5

    I.    The Court misapprehended the "doubly" deferential standard of review when it made its own factual findings and failed to defer to the trial judge. ............................................................................................5

    II.   The Court overlooked race-neutral reasons the prosecution gave for striking Davis rather than two white jurors. ...............................12

    III.  The Court should have affirmed on the alternative ground that clearly established federal law in 1995 did not preclude the ACCA's "dual motivation analysis."...................................................................14

CONCLUSION ....................................................................................16

CERTIFICATE OF COMPLIANCE....................................................17

CERTIFICATE OF SERVICE .............................................................18

# TABLE OF AUTHORITIES

**Cases**

*Batson v. Kentucky,*
476 U.S. 79 (1986)........................................................................1-7, 9-11, 14, 15

*Brown v. Davenport,*
596 U.S. 118 (2022).......................................................................10

*Edwards v. Vannoy,*
593 U.S. 255 (2021).......................................................................10

*Ex parte Sockwell,*
675 So.2d 38 (Ala. 1995)........................................................ 2, 3, 12, 13

*Harrington v. Richter,*
562 U.S. 86 (2011).........................................................................1, 5, 11

*Hernandez v. New York,*
500 U.S. 352 (1991)................................................................ 5, 6, 8, 11

*King v. Moore,*
196 F.3d 1327 (11th Cir. 1999) ...........................................................14

*King v. Warden,*
69 F.4th 856 (11th Cir. 2023) ................................................ 2, 10, 11, 13, 14, 16

*Lee v. Commissioner,*
726 F.3d 1172 (11th Cir. 2013) ....................................... 1, 7, 9, 10, 14

*Marshall v. Lonberger,*
459 U.S. 422 (1983).........................................................................6

*McNair v. Campbell,*
307 F.Supp. 2d 1277 (M.D. Ala. 2004), *aff'd in relevant part,*
416 F.3d 1291 (11th Cir. 2005) ........................................................13

*Mt. Healthy v. Doyle,*
429 U.S. 274 (1977).......................................................................15

*Shinn v. Kayer,*
592 U.S. 111 (2020)........................................................................1, 6

*Snyder v. Louisiana,*
552 U.S. 472 (2008)................................................................ 1, 5, 6, 9

*Sockwell v. State*,
   675 So.2d 4 (Ala. Crim. App. 1993)........................................................ 2, 4, 12

*United States v. Ramirez-Chilel*,
   289 F.3d 744 (11th Cir. 2002) ......................................................................5

*United States v. Tokars*,
   95 F.3d 1520 (11th Cir. 1996) .............................................................. 14, 15

*United States v. Walker*,
   490 F.3d 1282 (11th Cir. 2007) ..................................................... 6, 9, 10, 11

*Wallace v. Morrison*,
   87 F.3d 1271 (11th Cir. 1996) ............................................................ 3, 14, 15

*White v. Woodall*,
   572 U.S. 415 (2014)...................................................................................10

## Statutes

28 U.S.C. §2254(d) ...........................................................................................13

28 U.S.C. §2254(d)(1)............................................................................ 2, 3, 11, 16

28 U.S.C. §2254(d)(2)........................................................................................11

28 U.S.C. §2254(e)(1) .............................................................................. 2, 6, 9, 11

Ala. Code §13A-5-40(7) ....................................................................................4

Antiterrorism and Effective Dealth Penalty Act of 1996 ........................ 1, 2, 5, 6, 7,
...........................................................................................................9-12, 14-16

## PETITION FOR PANEL REHEARING

Respondent respectfully requests rehearing because the Court "overlooked or misapprehended" three dispositive issues of law or fact. Fed. R. App. P. 40(a)(2).

*First*, a major crux of the Court's opinion was the prosecutor's comparison between Sockwell and a juror, but the Court was not free to draw its own inferences from the trial transcript. *E.g.*, Op.26-27, 28 n.13. Whether the remark was merely descriptive or a reason for the strike is a *pure issue of fact*, and the state-court finding could not be overturned absent *clear error*. Extra deference was owed to the trial judge's firsthand observations of the prosecutor, and notably, *no one* in the courtroom at the time commented on the comparison. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Yet this Court did not defer, and without explanation, it rejected the state-court finding as "unpersuasive" (Op.14) based a frozen cold record.

This Court could not easily override a credibility finding in a normal appeal, and this is not an appeal. It is a collateral attack governed by AEDPA, which demands "far more" than "even clear error." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020). The Court misapprehended the combined effect of *Batson*'s progeny (like *Snyder*) and AEDPA to produce a standard of review that is "doubly" deferential. *Cf. Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court must "indulge every maximum factual inference from th[e] evidentiary record. *Lee v. Commissioner*, 726 F.3d 1172, 1223 (11th Cir. 2013).

1

To be sure, the Court correctly identified *one* of its duties under AEDPA: to deny relief unless "no reasonable and fairminded jurist could have considered 'all relevant circumstances' and find no *Batson* violation." Op.18. The analysis under §2254(d)(1) could not proceed on the majority's own version of the facts *unless* Sockwell had first overcome §2254(e)(1). The majority opinion did not hold that he had. As a result, the majority premised "strong evidence of discriminatory purpose" (Op.27) on a finding it was not entitled to make. *See* Op.28 n.13 ("Brooks … stat[ed] she struck [Davis] for being the same race as the defendant."). And that same finding was the basis for distinguishing a high wall of precedent, including *King v. Warden*, 69 F.4th 856 (11th Cir. 2023), "the closest case" to this one. *Id*.

Applying the proper double-deference standard, the Court should hold that Sockwell did not bring the "clear and convincing evidence" required to cast off the state-court fact finding, and what remains of his claim is not strong enough for relief.

**Second**, the Court compared prospective jurors based on the vagueness of their answers during voir dire (Op.26) but overlooked other race-neutral reasons the prosecutor gave for the challenged strike. Davis was not just "a little vaguer" than the others (Op.31) but also demonstrated a "lack of candor," a reason the state courts credited and one well supported by the transcript. *Ex parte Sockwell*, 675 So.2d 38, 40 (Ala. 1995); *Sockwell v. State*, 675 So.2d 4, 20 (Ala. Crim. App. 1993) ("[He] appeared to be less than candid…"). The prosecutor also said Davis was equivocal

about the death penalty. *Ex parte Sockwell*, 675 So.2d at 40. The Court ignored the first reason and erroneously dismissed the second as "not addressed" by the ASC. Op.26 n.11. Consequently, the Court inferred a racial motive based on an incomplete and incorrect view of the facts. These grounds for the strike, among others cited by the district court, defuse one of the four relevant circumstances (Op.26) and distinguish Davis from otherwise "similarly situated" jurors (Op.31).

***Third***, the Court overlooked an alternative ground for affirmance based on the "dual motivation analysis" of *Wallace v. Morrison*, 87 F.3d 1271 (11th Cir. 1996). The district court held that "clearly established federal law at the time of the ASC's decision did not preclude it" from considering whether Brooks "still would have struck Davis absent any consideration of his race." DE50:49. Even if, *arguendo*, "discrimination was a substantial part of the motivation," *Wallace*, 87 F.3d at 1274, this Court acknowledged that the prosecution had three race-neutral reasons, Op.14, so the record "reasonably supports the conclusion" that race was not "the 'sole' reason[] for her strike." DE50:50.

The Court need not endorse *Wallace*'s dual-motive analysis today (although it has never been expressly overruled or abrogated). But the Court must recognize that it was open to the state courts when they rejected this *Batson* claim in 1995, so their decision did not contravene "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

## STATEMENT

Before midnight on March 10, 1988, Sockwell ambushed Deputy Sheriff Isaiah Harris and killed him with a shotgun blast to the face in exchange for $100. *See Sockwell*, 675 So.2d at 12-13. The next day, Sockwell was arrested. In interviews with police, he twice confessed to the murder. DE14-13:36-37, 41. Sockwell was convicted and sentenced to death for "murder done for a pecuniary gain or other valuable consideration of pursuant to a contract for hire." Ala. Code §13A-5-40(7).

At his 1990 trial, Sockwell raised a *Batson* claim, and the court ordered the prosecutor to give her reasons for each of the State's strikes. The court denied the motion, defense counsel renewed it, and the court denied it again. Sockwell raised *Batson* in the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Both courts affirmed his conviction. In federal habeas, Sockwell raised the same claim, which the district court rejected.

On June 30, 2025, this Court reversed the district court's order denying Sockwell's habeas petition and remanded "with instructions to issue the writ of habeas corpus conditioned upon the right of Alabama to retry Sockwell." Op.33-34. Judge Luck dissented. Op.35-62.

# ARGUMENT

## I. The Court misapprehended the "doubly" deferential standard of review when it made its own factual findings and failed to defer to the trial judge.

The applicable constitutional standard and AEDPA's standard are "both highly deferential, and when the two apply in tandem, review is doubly so." *Cf. Richter*, 562 U.S. at 105 (cleaned up). While *Richter* involved *Strickland* claims, its doubly deferential standard should apply even more so to *Batson* claims in light of the trial court's "pivotal role." *Snyder*, 552 U.S. at 477.

The ultimate inquiry is "an evaluation of the prosecutor's credibility," *id.*, which is not only a "pure issue of fact" but one where "the best evidence often will be the demeanor of the attorney" exercising the strike, *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991) (plurality); *contra* Gray Brief 3 (asserting that "the most important evidence" is "the transcript of jury selection").

Here, the Court described "the decisive question" as whether the prosecutor "should be believed," Op.16, as if the Court were deciding credibility *de novo*. But the "choice … to believe" was made by the trial judge, whose finding is "conclusive" unless it was "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002); *accord Hernandez*, 500 U.S. at 366 ("The reasons justifying a deferential standard of review in other contexts … apply with equal force to our review of a state trial court's findings of fact made in connection

with a [*Batson*] claim."). The "perception of an attorney's credibility" is "essential." *United States v. Walker*, 490 F.3d 1282, 1293 (11th Cir. 2007). And "trial judge is in the best position to evaluate an attorney's candor and to ferret out purposeful discrimination." *Id.* "In addition, race-neutral reasons … often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance." *Snyder*, 552 U.S. at 477.

For these reasons, even in an ordinary "appeal, a trial court's ruling on the issue of discriminatory intent *must be sustained* unless it is clearly erroneous." *Id.* (emphasis added). "[I]n the absence of exceptional circumstances, [the Supreme Court] would defer." *Id.* (quoting *Hernandez*, 500 U.S. at 336).

AEDPA layers deference upon deference, requiring "far more than … 'even clear error.'" *Kayer*, 592 U.S. at 118. In general, a federal court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

**A.** The Court misapplied these principles when it assigned error to the "finding that [the prosecutor's remark] was merely a descriptive identification," Op.14, and found instead that it was a "stat[ement] that she struck him for being the same race as the defendant," Op.28 n.13. The Court could supplant the state-court finding only if Sockwell had "clear and convincing evidence." 28 U.S.C. §2254(e)(1). The Court cited none. All it said was that it found the state-court finding

"unpersuasive" (Op.14) and a "factual error" (Op.15) without explaining why. And the Court simultaneously deemed the ASC's finding "not … unreasonable" at *Batson* step two (Op.14) while rejecting it and relying on its opposite elsewhere in the opinion. *See* Op.26-27 (AEDPA); Op.28 n.13 (AEDPA); Op.30 (*de novo*). But the Court needed to decide whether the finding was correct or incorrect and then apply the law to the facts; either Sockwell adequately rebutted the ASC's finding under §2254, or he did not.

Applying AEDPA, the Court should have recognized that the prosecutor's comparison was at least ambiguous—five courts have now resolved Sockwell's *Batson* claim in four different ways—and then "indulge[d] every maximum factual inference" in the state court's favor, *Lee*, 726 F.3d at 1223. The district court did that correctly. In the same passage describing the ASC's reasoning as "unpersuasive," which the Court relied upon (Op.14), the district court explained why being "unpersuasive" does not disqualify the ASC from AEDPA deference, and there were "compelling circumstances" in support of the ASC's ultimate conclusion. DE50:38.

*First*, the ASC's finding was "bolstered" by the trial record, which shows that at the time, "*apparently no one, including the defense, believed that Brooks had just … admitt[ed] that she struck a juror because of the juror's race*," despite that "counsel were highly attuned to *Batson* issues" and gave a "determined argument at the *Batson* hearing." DE50:39-40 (emphasis added). The district court rightly found

it "implausible" that a "declaration of [] racial animus" and "naked violation" occurred in open court yet "somehow went unnoticed." DE50:40.

*Second*, Brooks was asked to give her reasons twice, and before she ever compared Davis to Sockwell, she "had already plainly articulated a race-neutral reason … without drawing the racial comparison." DE50:38. "Brooks's mention of Davis's race and her comparison of the race of Davis and [Sockwell] plainly had nothing to do with the proffered reasons for her strike. Brooks did not offer Davis's race … as 'underpinning' for her concern that Davis was unduly vague," for example. DE50:45.

*Third*, the "crux" of Sockwell's claim relies "only" on "the very evidence that was reviewed and interpreted by the ASC in its opinion." *Id.* The district court found that "twenty words" in the transcript do "not clearly and convincingly establish that the ASC erred." DE50:37-38.

This Court did not engage with those reasons. Nowhere in its opinion did the Court suggest that it applied the appellate standard for credibility findings. Nowhere did the Court mention the peculiar province of the trial judge. *Hernandez*, 500 U.S. at 365. Respondent can only infer that the Court gave no weight to the "best evidence" in the case—the trial judge's assessment of "demeanor," *id.*—while displacing a state-court finding based on the Court's reading of twenty words in a

thirty-five year-old transcript. That is not and should not be "how AEDPA works." *Lee*, 726 F.3d at 1223.

**B.** Similarly, the Court transgressed AEDPA in its ultimate finding of purposeful discrimination, which contradicted not one but *two* state-court credibility determinations presumed to be correct under §2254(e)(1). The trial judge sits in the "best position" to evaluate the candor and demeanor not only of the prosecutor, *Walker*, 490 F.3d at 1294, but of the challenged juror as well.

Here, the trial judge undoubtedly considered the credibility of both the prosecutor—she withstood examination by the defense counsel—and the juror. During voir dire, the prosecutor invited the judge to recall how the struck venireman could not give a straight answer on pretrial publicity. DE14-3:9 ("You might remember…"). And when the prosecutor was examined by defense counsel, she disputed the defense's "characteriz[ation]" of what transpired, stating, "I don't recall any other juror, though, who *changed his mind* about where he had heard" information bearing on the defendant's guilt. *Id.* at 30 (emphasis added). The judge's ruling on Sockwell's *Batson* motion necessarily decided that Davis's "demeanor … exhibited the basis for the strike." *Snyder*, 552 U.S. at 477.

Without once mentioning candor, credibility, demeanor, sincerity, or the like, the Court instead devoted pages to circumstantial evidence: (1) other cases involving the same prosecutor in the wake of *Batson*'s "revolution[] [in] day-to-day jury

selection," *Edwards v. Vannoy*, 593 U.S. 255, 270 (2021), which demonstrate the Alabama Supreme Court's commitment to reversing *Batson* violations, and (2) statistical disparities in the strike rates that pale in comparison to the disparities involved in *King v. Warden*, and *Lee v. Commissioner*, both of which rejected *Batson* claims under AEDPA.[1] Whatever the weight of these circumstances in a *de novo* review, the Court should have weighed them against the best and most direct evidence of motive—the trial judge's perceptions of the prosecutor and the juror. And then, even if the Court were skeptical or suspicious of some reasons for the strike, *but see infra* §II, the Court still should have deferred, as it did in *Walker*:

> Thus, while we are troubled by the weakness of record evidence in support of these four *Batson* challenges …, we are constrained to defer

---

[1] Separately, the Court's efforts to distinguish *King* and *Lee* suggest the absence of clearly established federal law in 1995 that would command relief. Responding to the dissent's "dive[] through several Eleventh Circuit cases," the majority wrote that while *King* (a case denying relief) may be "the closest" analogy, still "none of those cases involved a direct comparison of the defendant to a stricken Juror *and* a state supreme court calling out the prosecutor by name." Op.28 n.13. But if those distinguishing features make Sockwell's case unique, then this Court needed to "extend a rationale … to the facts at hand," meaning "by definition the rationale was not clearly established." *White v. Woodall*, 572 U.S. 415, 426 (2014). This case illustrates why "'the more general the rule[,] … the more leeway [state] courts have in reaching outcomes in case-by-case determinations' before their decisions can be fairly labeled unreasonable." *Brown v. Davenport*, 596 U.S. 118, 144 (2022).

Further, while the majority opinion relies on *Adkins* and *McGahee*, the Court later determined in *Lee* that "a significant part of the AEDPA rationale and analysis in *Adkins* is inconsistent with Supreme Court and our Circuit precedent." 726 F.3d at 1220; *id.* at 1213-14 (discussing *McGahee*); *accord King*, 69 F.4th at 870. Given the Circuit's difficulties defining a state court's *Batson* duties as recently as 2013, the Court should have afforded the benefit of the doubt to a state high court in 1995.

to the district court's findings on the genuineness of these reasons and, correspondingly, on the likelihood of purposeful discrimination.

490 F.3d at 1294. That deference, afforded to a federal district court in *Walker*, was owed *a fortiori* to the state trial court under AEDPA. Collateral review is a guard against "extreme malfunctions …, not a substitute for ordinary error correction." *King*, 69 F.4th at 873 (quoting *Richter*, 672 U.S. at 102-03).

**C.** Part of the problem lies in the Court treating this as a §2254(d)(1) case alleging an unreasonable application of law, despite that "the decisive question" was one of fact: "whether the prosecutor's race neutral explanation should be believed." Op.16. That's a factual question that cannot be relitigated unless §2254(d)(2) and §2254(e)(1) are satisfied. It is true that Sockwell argued the "state court failed to follow *Batson*'s three steps," which would be reviewed under §2254(d)(1), but the Court rightly rejected that argument as "foreclosed by this court's precedent." Op.15, 17. What remains is a "pure issue of fact." *Hernandez*, 500 U.S. at 364. The Court acknowledged as much when it described Sockwell's case as "akin" to one in which "specific proffered reasons provided by the prosecutor were incorrect and/or contradicted by the record," Op.18 n.3. But if the state courts were wrong to believe that the prosecutor's remark was a mere description or wrong that she had a race-neutral motive, those are factual disputes.

The majority erred in conducting a purely legal analysis while indulging Sockwell's attacks on factual findings by the state courts. Even if the Court were

inclined to identify legal error, it could not do so on its own version of the facts unless Sockwell had met AEDPA's strictures for displacing state-court findings.

## II. The Court overlooked race-neutral reasons the prosecution gave for striking Davis rather than two white jurors.

The Court compared the jurors only in terms of their "vague answers about pretrial publicity." Op.26. But Davis was not just "a little vaguer" than the other two jurors, Burch and McFarlin. Op.31. "Unlike other veniremembers, *[he] appeared to be less than candid*." *Sockwell*, 675 So.2d at 20 (emphasis added). "Specifically, [Davis] first stated that he had *read* about the case and then stated that he had *heard* about the case. Nevertheless, [he] did not state what he had heard, although he was [asked]." *Id.* (emphasis added). And then when asked whether he had "any information as to whether or not this defendant was guilty," Davis answered, "I had heard something." Op.4. He was asked again, "Did you hear specifically about this defendant right here?" But the second time, he answered, "No." *Id.* at 5. The Alabama Supreme Court reasonably found that Davis's "lack of candor" was a race-neutral reason for the strike, *Ex parte Sockwell*, 675 So.2d at 40, but this Court ignored it altogether.

The Court mentioned another race-neutral reason for the strike but erroneously dismissed it in a footnote: "Brooks also stated that Davis' view on the death penalty was another reason for striking him, but that is not addressed by the Alabama Supreme Court." Op.26 n.11. But the ASC *did* address it, writing that one

of the "reasons the prosecutor gave for striking [Davis] [was] … whether he could be willing to recommend the death penalty." *Ex parte Sockwell*, 675 So.2d at 40; *accord* Op.14 (quoting same sentence in full).[2] Davis had said "it could go either way," DE14-2:145, which the prosecution accurately recalled and restated as the reason for the strike: "His answer to the death penalty did not give me a lot of clues either way as to how he felt. I think the words he used were I could go either way." Op.8. The ASC reasonably found that Davis's equivocation on the death penalty was a race-neutral reason, even if Davis later agreed that he would be a fair juror.

And the district court cited yet another race-neutral reason for the strike. If this Court was right to find that the prosecutor's comparison of Davis and Sockwell was a reason for the strike, then "their similarity in age" was another "legitimate, non-discriminatory reason for exercising [the] strike." DE50:47 n.7 (citing *McNair v. Campbell*, 307 F.Supp. 2d 1277 (M.D. Ala. 2004), *aff'd in relevant part*, 416 F.3d 1291 (11th Cir. 2005)). After all, she noted the race, sex, *and* age of the juror. If race was a reason, then so were sex and age. Together with vagueness, possible exposure to pretrial publicity, lack of candor, and equivocation about the death penalty, that

---

[2] Even if the ASC had not addressed it, the question is whether the state-court proceedings "resulted in a decision" beyond debate, 28 U.S.C. §2254(d), so whether the ASC addressed "each fact or argument" is irrelevant, as the panel recognized elsewhere, Op.15. *See King*, 69 F.4th at 872.

makes six reasons the Court should have considered before holding the prosecutor's "[r]easoning" and "[r]esponse" as two circumstances in Sockwell's favor. Op.26.

The Court thus erred when it overcame the presumption of correctness, finding "highly relevant" circumstances supporting a *Batson* violation, without discussing any of the other race-neutral reasons supported by the record in its review under AEDPA. That error matters. First, "AEDPA deference" requires the Court to "credit every reason the prosecutor gave." *Lee*, 726 F.3d at 1223; *accord King*, 69 F.4th at 870. Second, the Court could not perform "side-by-side comparisons" of prospective jurors without acknowledging all of the reasons that Davis was struck. Op.16.

**III.    The Court should have affirmed on the alternative ground that clearly established federal law in 1995 did not preclude the ACCA's "dual motivation analysis."**

Even if there were a racial motive for the strike, the Court erred because the state courts could have reasonably rejected Sockwell's *Batson* claim on the ground that the prosecution had "more than one reason." *Wallace*, 87 F.3d at 1274. "When the motives for striking a prospective juror are both racial and legitimate, *Batson* error arises only if the legitimate reasons were not in themselves sufficient reason for striking the juror." *King v. Moore*, 196 F.3d 1327, 1335 (11th Cir. 1999); *see also United States v. Tokars*, 95 F.3d 1520 (11th Cir. 1996). In other words, if "the strike would have been exercised" anyway—*i.e.*, "solely for race-neutral reasons,"

then the presence of a superfluous race-conscious reason as a "part of the prosecutor's motivation" is not unconstitutional. *Wallace*, 87 F.3d at 1274-75. Here, the prosecutor offered many reasons, *supra* §II, and applying AEDPA deference, this Court could not and did not reject every one of them as a motivation; even on *de novo* review, this Court did not hold definitively that racial animus was the sole motive, Op.32 ("a substantial likelihood of race-based considerations").

Whatever their validity today, these cases undoubtedly reflect the law at the time Sockwell's claim was resolved in state court. *See Wallace*, 87 F.3d at 1274 (citing decisions of the 2nd, 4th, and 8th Circuits); *Tokars*, 95 F.3d at 1533 (same). And that is no surprise because the Supreme Court had long applied "a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused." *Mt. Healthy v. Doyle*, 429 U.S. 274, 285 (1977). If the government "would have reached the same decision" anyway, there could be no "constitutional violation justifying remedial action." *Id.* at 285, 287. Applied to *Batson*, a juror struck for multiple reasons would not be struck "simply because" of race. Op.28 n.13 (quoting *Batson v. Kentucky*, 476 U.S. 79, 97 (1986)).

As the district court held, "even if Brooks considered Davis's race while striking him, Brooks did not violate *Batson* because Davis's race was not a substantial motivation, much less the 'sole' reason, for her strike." DE50:50.

This argument was adjudicated below, briefed and argued in this Court, but the Court's opinion did not address it (either under AEDPA or *de novo*). It proves that the state-court process did not result in a decision that violated "clearly established Federal law." 28 U.S.C. §2254(d)(1); *cf. King*, 69 F.4th at 872 ("The district court was correct to supply an alternative *justification* … for the state court's *reason* for the decision.").

## CONCLUSION

The Court should grant the petition for panel rehearing and affirm.

<div style="margin-left:40%">

Steve Marshall
*Attorney General*

Edmund G. LaCour Jr.
*Solicitor General*

*/s/ Robert M. Overing*
Robert M. Overing
*Deputy Solicitor General*

Dylan L. Mauldin
*Assistant Solicitor General*

Henry M. Johnson
*Assistant Attorney General*

</div>

July 21, 2025

OF COUNSEL:

OFFICE OF THE ALABAMA ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Phone: 334.242.7300
Robert.Overing@AlabamaAG.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length limitations of Fed. R. App. P. 40(d)(3)(A) because it contains 3,897 words, including all headings, footnotes, and quotations and excluding parts exempted under Fed. R. App. P. 32(f).

In addition, this brief complies with the typeface and style requirements of FED. R. APP. P. 32(a)(5)-(6) because it uses a 14-point proportionally spaced serif font in a plain, roman style.

> /s/ Robert M. Overing
> Robert M. Overing
> *Deputy Solicitor General*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I electronically filed Respondent-Appellee's Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Melissa Madsen, Shannon L. Holliday, Michael E. Rayfield**, **Deirdre Farrell, Christopher J. Houpt, Matthew D. Ingber, and Christopher G. Papapetrou**.

/s/ Robert M. Overing
Robert M. Overing
*Deputy Solicitor General*

July 21, 2025

OF COUNSEL:

OFFICE OF THE ALABAMA ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Phone:  334.242.7300
Robert.Overing@AlabamaAG.gov